Our next and final case for today is United States v. Brian Stafford. We will hear first from the appellant, Mr. Theis. May it please the court, Bill Theis on behalf of Mr. Stafford. I'm going to start with the evidentiary issue, although I hope to get to the trafficking enhancement under the guidelines, especially if the court has any questions about that. In this case, the district court admitted evidence that should have been excluded under Rule 404 and Rule 403. The district court did exactly what this court, Gomez, said a district court should not do. It said it's going to admit the evidence. It stated four bases that it thought hit the mark under 404, but gave no explanation of how its ruling tied in with those categories. And there's really no denying that. The court's order is clear. It's in the appendix. The government doesn't deny that. The government's main defense of all of this is its reliance on this court's decision, United States v. Maybe. And Maybe is a case where the government seems to suggest that the district court doesn't have to explain itself if it relies on the analysis presented by the government. That's cutting it pretty fine with Gomez and maybe never claimed to overrule Gomez. But invoking Maybe doesn't really work at all in this case because the government presented three bases for admitting this evidence, knowledge, intent, and control of the Fort. And in response to that, the court invoked knowledge, intent, preparation, and plan and said nothing about control. And as I noted earlier, it never explained how its analysis lined these up under Gomez. So I don't think you can fairly say that this is a Maybe case. Well, certainly the court doesn't say very much. I agree with that. But it does cite non-propensity uses for the evidence, which is one of the big points of Gomez. You need to be able to show all the way down the line a chain of non-propensity uses. The court's very careful with its limiting instructions where I think it elaborates a little more for the jury, both at the time of admission and then at the end of the trial, that this evidence cannot be used just to assume that something he does on November 1st is the same as something he'll do on November 2nd. So I actually think this evidence is right on the margins anyway. It's just a day before. I mean, it's so interlinked with what happened on the next day on the November 2 side of things. I'm willing to look at it under the 404B rubric because that's what everybody's doing. There are issues after Gomez about how much of the 403 side of things need to be done just sua sponte by the district court and how much does defense have to be saying we need more balancing, we need a more fulsome explanation. I mean, I just in the end, I can't see a substantive problem here. It seems like within the discretion of the judge to say intent preparation. I mean, there's a lot of preparation that you can see out of that November 1st course of events. Well, the judge can certainly look at those things. And I think we all agree the judge has a lot of discretion. But I think this court has also been clear that you folks can review that discretion only if the judge explains what he or she is doing. And that explanation was not there. And it's true, as you pointed out, the judge makes a fleeting reference to propensity and acknowledges we can't use it. Well, we'll get to both of those. In terms of the order, he really doesn't say anything about propensity. And one of the problems is the government, although it says, oh, we don't want to rely on propensity, they don't say a word in their pleadings about how they satisfy that burden. They say we need to admit it because it shows intent. Well, of course it does. But does it show intent without showing propensity? And coming back to the instructions. And what about plan and preparation? I mean, he's getting the same gun, the same serial number. You know, if you were sitting as the trial court, Your Honor, I could see how you would explain that. But the judge didn't explain it. And the government didn't explain it. That's one of the weird things about the government's invocation of maybe is that they gave the judge a deficient explanation, which in their minds covered intent, knowledge, and control, and said nothing about preparation and plan. And the judge says nothing about control and invokes preparation and plan, even though neither side had presented him with any argument on that. Mr. Tice, was there a hearing on the motion in Lemonnier? We were struggling to find a transcript because typically on something like this, one would expect a hearing where there would be some back and forth and the judge could provide some more of his or her insight. There was not. And my apologies for not explaining what I may be foolishly assumed was obvious. There was not a hearing. There were these pleadings. And then we get the order from the judge before the trial started. So there wasn't a hearing where the judge kind of had an elaboration? No, no, absolutely not. No, that did not happen. And I want to loop back for a second to the whole idea of instructions. That area also has its own problems because the judge gives two different instructions. During the trial, he says you may only use this for knowledge and intent. And then at the end, he tells the jury, oh, you may only use this for intent and control. Now, I know we make this assumption that jurors follow instructions. And of course, as a good defense lawyer, I think that's all wrong. But I live under that assumption. But when we get to the case where the judge is giving differing instructions, and I'm sure the government has some theory as to why these two instructions can be lined up and make perfect sense. But wait a second, we're talking about a jury that's honestly following the instructions. What is the jury to think about this? If they're really paying attention to these instructions, I don't know how they can process that. Now, we've talked a lot about 404. And I don't want to lose sight of 403 because it's basically that two-step process. And really, in 403, once again, the judge says nothing about how he analyzes 403. The government doesn't deal with it. And this was another strange aspect of this case is the government came down so hard on control. We got to show Stafford's control of the car. And how did they want to show it? Because he sold some drugs in the house. That is something that the judge should have been thinking about if the judge was going to be making a principled exercise of discretion. And we can parse that out now and try to imagine what a good district judge would have thought. But the good district judge in this case did not tell us what he actually thought. Could you say just a word, too? I understand your basic argument on harmless error is just the fact that there were the two trials and a different result. Is that right? Well, yes, with this sort of nuance. I'm not urging this court to adopt a rule that says if there's a mistrial the first time and then there's different evidence the second time, that means that the error was harmful. But I'm saying you can draw inferences about the harmlessness of the error, about what happened. And the government wants to take you in a totally wrong direction by citing Powell, which was a double jeopardy case. It has nothing to do with this. So I hope I've answered your question on that. Yeah, that's fine. I guess I still have – I said if I had time – Does the court have any questions about the traffic enhancement or I could address that later in rebuttal? Well, if you would like a minute for rebuttal, you can do it then. I don't see any particular questions at this time. All right. Thank you, Mr. Tice. We'll now hear from the government. Mr. Green. May it please the court, David Green for the United States. The district court did not abuse its discretion by admitting the November 1st evidence under 404B and Rule 403. That evidence included the drug transaction as well as gun possession. That evidence was properly admitted for the non-propensity purposes of showing first the defendant's control and access of the 4-Taurus, where items relevant to the charged offenses were found on November 2nd, as well as the defendant's intent to distribute the drugs found in the 4-Taurus on November 2nd. But the judge has to do more than that, right? There has to be more than just identifying what the eventual non-propensity purpose is. Under Gomez, the judge has to provide the non-propensity line of reasoning from beginning to that end purpose. Is that correct? Your Honor, what happened in the district court did comply with Gomez, which required that the proponent provide the non-propensity purpose. Here, this was fully briefed by the parties. The government proffered those non-propensity purposes. Government agrees with defense counsel that there wasn't a hearing, but then there was the written order after full briefing at which the court identified the non-propensity purposes in its written order, as Gomez encourages. So you're standing on the language in your motion for the explanation of what the non-propensity purpose the government was suggesting was? Your Honor, that is certainly relevant. The government believes that the court should review the entire record and not just look narrowly at the written order. It was clear that the district court considered this issue carefully, and there are all different points throughout the record where that was indicated, where the court was carefully considering how to word the limiting instruction again consistently. I guess I'm not sure where in the record you can point to that says, other than the order, that the district court considered the motion at that point carefully, because all we have is the order, right? Correct, Your Honor. There wasn't a separate hearing, but that order did identify the non-propensity purposes as well as reference the 403 analysis, and that goes beyond. Well, but the reference is just that. It's a fleeting reference to 403 analysis. Presumably, one would think that particularly here, where on the one hand, you would look at the probative value of the temporal proximity, but you also have to weigh the prejudicial value of the temporal proximity and the sale of the narcotics, which is one of the counts that the jury had to consider. And so one would expect some sort of explanation, kind of balancing that out, so that we can review how the court exercised discretion in weighing all of those factors. But at present, all we have is this 12-line order. Your Honor, the district court certainly could have said more at that time. However, the court's- Looking at the order just to help us, where does he give an explanation? Well, Your Honor, the government's position is that the court did rely on the full briefing of the parties. The order does list and describe the non-propensity purposes, but the order could have said more. However, later in the trial, the court did specifically reference the potential risks associated with 404B evidence and explained that that was why he was carefully crafting the limiting instructions that were given not once but twice. The form of the limiting instructions was agreed to by all parties, as well as the timing, which is another thing that Gomez encouraged district courts to do, was to consult with the parties. So it was given before the case agent's testimony, introducing the November 1st evidence, as well as in the final jury instructions. Could you address a bit the issue of assuming, Professor Argument, that this case is remanded, what the scope of the remand should be? Your Honor, the government does not believe that the case should be remanded, of course. And the government asked the court to uphold the jury verdict. I haven't addressed the sentencing issue yet. That could be a separate remand, potentially. But the government believes that this court should uphold both the jury verdict as well as the sentence that the defendant received. No, I understand that's the government's position. I'm just saying that if the court were to hold that the explanation does not meet the standard in Gomez and its progeny, does the government have a position as to what the scope of an appropriate remand would be in this case? Your Honor, I apologize. I hadn't prepared specifically for that question. Perhaps a remand could encompass an opportunity for the court to further elaborate what its reasoning. I guess that's what I was getting at, is that we could remand for a new trial. There have been instances where we remanded for just a further explanation of what the judge did. And I was wondering whether the government has a position one way or the other on that particular issue. Your Honor, if this court did find that the record was lacking, the government would believe that it would be appropriate for an opportunity for further explanation or elaboration on the district court's order admitting the evidence. Your Honor, if I may briefly, even if the court were to disagree or believe that the record isn't sufficient, any such error was harmless. The fact that the prior jury hung on the November 1st charges is of no moment in this scenario. The parties don't know why that first jury hung, and the court here should not speculate. And this is not a controlled experiment. There were important differences in the evidence that was offered in the second trial. And in particular, the defendant on appeal and below doesn't dispute that the evidence from November 1st regarding the gun, which was found in the vehicle on November 2nd, was properly admitted. That was not heard at the first trial. And so there's important differences in the presentation of evidence. But even putting that aside, the evidence here was extremely strong. There was October 24th evidence of another gun transaction that showed the defendant accessing the Ford Taurus. There was the gun in the house on November 1st discovered in the car on November 2nd that had the defendant's DNA on it. There was a second gun discovered in the car on November 2nd where a matching box with the same serial number was found in the defendant's garage. Did the jury in the first trial have all that evidence as well? The jury did hear much of this evidence, but again, they did not hear evidence relating to the gun on November 1st. And another important piece of evidence is at the tail end of the November 1st evidence, there's a conversation between the defendant and the source in which the two are discussing and contemplating a future drug transaction. And the defendant is discussing accurately, according to the government's drug trafficking expert, what the prices of cocaine were. And this is relevant because it goes to the intent to distribute the drugs, including cocaine, that were found on November 2nd. So there's no transaction involving cocaine on November 1st. And the jury heard this discussion between the two, the source and the defendant, in which they go into significant detail about the price of an eighth of a kilo, which they refer to as four in a split, as well as the market rates of a kilo of cocaine. So can I ask you a quick question about the trafficking part? Yes, Your Honor. Mr. Tice argues that however well the CS and Stafford may have known each other, we're asking for a pretty big inference to know that the type of prior conviction was known to Mr. Stafford. In other words, prior conviction for a crime of violence, a controlled substance offense, or a misdemeanor crime of domestic violence. So I'm perfectly willing to think if they were longtime friends, maybe they knew that they each had a record. But you're asking for a lot of granularity there. What confidence can we have that this was really satisfied? Your Honor, it was really exceptional facts in this case, where it was the defendant's own representations that they were decades-long best friends that he had. Yeah, I accept that. But I don't know what you tell your best friends. My priors are all controlled substance offenses. Your Honor, it isn't in the record, the specific conversations, but we believe that the district court did not clearly err by a preponderance of the evidence in making that inference, that given how close they were. But that's its only reason, right, that they're just very close longtime friends. So he's assuming a lot of personal knowledge about the other person. That was the basis for the decision that the district court explained at the sentencing hearing. But again, the defendant didn't contest that at sentencing or in the filings that the defendant did, in fact, have qualifying convictions. No, but it's the knowledge. I mean, the fact of the convictions is quite different from the knowledge. Correct, Your Honor. And again, we just argue that the district court did not clearly err by a preponderance of the evidence on the record before it. And I see my time is up. Unless there are any other questions, I'd ask the court to affirm both the verdict and the sentence. Thank you. Mr. Tice, a short rebuttal. I want to start off by answering the question that Judge Lee asked about what would be the scope of a remand if there were one. As I understand it, what normally happens when there is an evidentiary error that is found to be substantial, the remedy is a new trial. I don't know that there are cases that remand solely for the purpose of the district court judge making the record that he or she should have made. I can't say that's out of the question because I haven't researched that. But it's certainly our position that the proper remedy would be a new trial. The government has also made much about the district court's crafting of limiting instructions. But I don't think we can lose sight of the fact that the purpose of a limiting instruction as opposed to a corrective instruction is to tell the jury, look, you're going to hear some evidence, but I want you to consider it for a limited purpose. That presupposes that the evidence is properly admitted. So if we're going to focus on the limiting instructions, we better make sure that we haven't hopped over the predicate question, was the evidence properly admitted? And here, it has not. I see I'm out of time. Thank you very much for your question. Thank you, Mr. Tice. Mr. Tice, we thank you for your service to the court. Thank you. All right. That concludes our arguments for today. We will adjourn, and we are in recess. Thank you.